IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TYRONE EUGENE YATES,**

    **Petitioner,**

    v.                                                       Criminal Action No. 3:06cr20-1
                                                              Civil Action No: 3:10 cv14
                                                               (Judge Bailey)

**UNITED STATES OF AMERICA,**

    **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

### I. Introduction

On March 9, 2010, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Dkt.# 80). The Government filed its response on April 9, 2010. (Dkt.# 86). Petitioner filed his reply to the Government's response on May 6, 2010. (Dkt.# 87).

### II. Facts

#### A. Conviction and Sentence

On November 7, 2006, petitioner signed a plea agreement, agreeing to plead guilty to Count Four of a four-count superseding indictment, possession with intent to distribute two ounces of cocaine base, also known as "crack," in violation of 21 U.S.C. § 841(a)(1). (Dkt.# 31 at 1). The maximum penalty for the offense being pled to was specified as not less than five (5) nor more than forty (40) years imprisonment, a $2,000,000.00 fine and at least four years term of supervised release. (Id.). The parties stipulated and agreed that the total drug relevant conduct of petitioner was 99.80 grams of cocaine base, also known as "crack." (Id., ¶9 at 3). In the plea agreement, the

petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 10. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1(A)(ii) of the Federal Rules of Appellate Procedure.

(Id. at 3 - 4).

On November 13, 2006, petitioner, then aged 30 and having attended school to the twelfth grade,[1] entered his plea in open court. (Dkt.# 75 at 5). During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud or summarized in open court each paragraph of the plea agreement, including the paragraph 10 *supra*. The Court then asked petitioner whether he and his counsel had reviewed the plea agreement together before he signed it, and petitioner stated that they had. (Id. at 14). Defense counsel also reported the same. (Id. at 22). The Court specifically asked petitioner if he understood the waiver of his appellate and post-conviction relief rights and petitioner said that he did. (Id. at 13 - 14). The Court then asked petitioner's counsel if he felt that his client understood the waiver of his appellate and post-conviction relief rights, and counsel replied "Yes, Your Honor,

---

[1] Petitioner testified that he had gone to the twelfth grade, but his PreSentence Investigation Report ("PSR") reports that he quit school while in the 11th grade and later obtained his GED while incarcerated. (Dkt.# 36, ¶72 at 13).

2

I do." (Id. at 14). The Court informed petitioner that the maximum sentence for the crime which he was pleading could be no less than five (5) nor more than forty (40) years imprisonment (Id. at 16), but that the ultimate sentence could be greater than that estimated by his counsel; petitioner indicated that he understood. (Id. at 18 - 19). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone until the PSR was completed and petitioner said "[y]es, sir." (Id. at 18 and 26). The Court then summarized the rights that petitioner was giving up by pleading guilty. (Id. at 19 - 21). During the plea hearing, the Government presented the testimony of Mark Spessert of the Charles Town Police Department to establish the factual basis for the plea. (Id. at 22 - 25). Defense counsel conducted a brief cross examination of Spessert. Petitioner did not contest the factual basis for the plea.

After the factual basis for the plea was presented, petitioner entered his plea. (Id. at 25). The Court asked petitioner if he was, in fact, guilty of Count Four of the indictment and petitioner advised the Court that he was. (Id. at 27). The Court then asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, sir." (Id. at 26). The Court further asked petitioner whether he thought that there was any thing that his lawyer had not done that he had asked him to do for him, and petitioner stated "[n]o, sir." (Id.). At the conclusion of the hearing, the Court determined that petitioner was competent; had made his plea freely and voluntarily with full understanding of its consequences; and that the elements of the crime in Count Four had been proven beyond a reasonable doubt. (Id. at 27). Petitioner did not object to the Court's finding.

On February 26, 2007, petitioner appeared before the court for sentencing. After hearing argument from counsel on petitioner's objection to his prior conviction for escape being considered a crime of violence in determining his career offender status under the Guidelines, the Court

overruled the objection. The Court then found petitioner had a base and adjusted offense subtotal level of 32, with a two-level reduction for acceptance of responsibility, along with an additional one-level reduction, resulting in an adjusted level of 29. (Dkt.# 74 at 23 - 25). After a Chapter 4 enhancement for career offender status, his adjusted offense level became a 34, recalculated to a total offense level of 31 after the three-level reductions for acceptance of responsibility. The criminal history, which had been a IV, became a VI after the application of the Chapter Four enhancement. (Id. at 25 - 26). The Court found that the sentence guideline range was 188 - 235 months of imprisonment. (Id.). Petitioner declined the opportunity to allocute. (Id. at 27).

The Court then heard argument from counsel. Defense counsel reiterated his previous objection, further asserting that petitioner's chronic health issues could be better treated outside of the prison system. (Id. at 27 - 29). The Government responded, pointing out that petitioner had not learned from his prior incarceration for committing the same drug crime and that a variant sentence was not warranted merely because defense counsel thought application of the career offender status was unfair. (Id. at 29 - 30). Despite that, the Government still recommended a sentence at the lower end of the Guidelines.

Taking all necessary information into consideration, the Court noted that petitioner only had two prior convictions because he was incarcerated so long for his last drug conviction, and in fact, was still on supervised release from that conviction when he committed the present offense. The Court found that petitioner's prior conviction for escape was a crime of violence under Guideline 4B1.1 and 4B1.2; there were no grounds for a variance; and that petitioner was a drug crime recidivist and a danger to the community. (Id. at 31 - 32). Despite these findings, the Court sentenced petitioner to 188 months, the lowest end of the Guideline, to be followed by a statutory

four-year period of supervised release. (Id. at 33 - 34).

**B. Direct Appeal**

On July 17, 2008,[2] petitioner filed a Notice of Appeal (Dkt.# 68). Appellate counsel filed an Anders[3] brief on his behalf, stating that there were no meritorious issues for appeal. Petitioner filed a *pro se* supplemental brief challenging his career offender classification. The Government filed a motion to dismiss based on the waiver of appellate rights in petitioner's plea agreement. Petitioner opposed the motion, asserting that because he did not know he could be sentenced as a career offender, his plea was not knowing or voluntary. Further, he argued that counsel was ineffective for:

a) not arguing the invalidity of his sentence; and

b) not securing an exception to his appellate waiver to permit him to challenge his career offender classification on appeal.

On May 4, 2009, the judgment of the District Court was dismissed in part and affirmed in part by the Fourth Circuit in an unpublished *per curiam* opinion. (Dkt.# 77). The Fourth Circuit found that while petitioner did knowingly and voluntarily waive his right to appeal his sentence, his assertions that his plea was involuntary and that he had been denied effective assistance of counsel constituted exceptions to the waiver, because those issues either could not be waived by appellate waiver or presented "colorable" constitutional challenges. Further, it held, petitioner's appellate waiver did not preclude a direct appeal of his conviction. Accordingly, although it denied the

---

[2] Although petitioner's original judgment was entered on April 10, 2007, an amended judgment was entered on July 8, 2008, pursuant to the claim made in his first § 2255 motion, that counsel had failed to file a notice of appeal after being specifically directed to do so. Petitioner filed his notice of appeal nine days after the amended judgment was entered.

[3] Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

5

Government's motion to dismiss as to any claims not foreclosed by the waiver, it noted that while it had jurisdiction to consider the excepted claims, it nonetheless found that none warranted vacatur. Mandate issued on May 26, 2009. (Dkt.# 79-1). Petitioner's August 4, 2009 petition for writ of *certiorari* with the United States Supreme Court was denied on October 14, 2009. (4th Cir. Dkt. # 38) (08-4737).

C. **Federal Habeas Corpus**

**Petitioners' Contentions (Dkt.# 80)**

Petitioner filed his first Motion to Vacate, Set Aside or Correct Sentence by a person in Federal Custody Under 28 U.S.C. § 2255 on February 8, 2008 (Dkt.# 46), raising several issues, *inter alia,* Count One, an allegation that counsel was ineffective for failing to file a notice of appeal after he had specifically requested that he do so. The Government was directed to respond and an evidentiary hearing was scheduled. Thereafter, on May 9, 2008, counsel for Defendant filed an unopposed Consent Motion for Entry of Amended Judgment and Commitment Order, containing a representation that the Government did not oppose an Amended Judgment and Commitment Order being entered. (Dkt.# 59). Accordingly, instead of an evidentiary hearing, on May 16, 2008, a Report and Recommendation ("R&R") was entered, recommending that an Amended Judgement and Commitment Order be entered. (Dkt.# 60). An Order adopting the R&R was entered on May 29, 2008, denying the § 2255 motion as moot,[4] and granting the Consent Motion. (Dkt.# 63). The Amended Judgment was entered on July 8, 2008 (Dkt.# 66) and petitioner's appeal proceeded thereafter.

Petitioner filed this present and second Motion to Vacate, Set Aside or Correct Sentence by

---

[4] Petitioner's July 16, 2007 motion to reinstate appeal (Dkt.# 40) was also denied as moot within the Order.

a person in Federal Custody Under 28 U.S.C. § 2255 on March 9, 2010. (Dkt.# 80), asserting only one ground of ineffective assistance ("IAC") against appellate counsel for not arguing the fact that he should not have been sentenced as a career offender, based in part on his prior conviction for prison escape, in light of the then-pending case of Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed. 484 (2009) (holding that a prior conviction for failing to report for weekend confinement under state law is not an "escape from a penal institution" qualifying for federal sentencing purposes as a "violent felony" under Armed Career Criminal Act provision (18 U.S.C. §924(e)(1)).

### Government's Response (Dkt.# 86)

In response, the Government noted that the U.S. Supreme Court's decision in Chambers was rendered on January 13, 2009, a full month after petitioner's Anders brief was filed, and eight days after petitioner mailed his *pro se* supplemental appellate brief. Therefore, at the time of the briefing in petitioner's appeal, the weight of existing federal authority, including that of the Fourth Circuit, was still as it had been at the time petitioner pled and was sentenced: any type of escape was deemed a crime of violence for career offender purposes under the Guidelines. Accordingly, petitioner's claim that appellate counsel was deficient for not pursuing what was then a futile issue in the Fourth Circuit and all but two other federal judicial circuits is unreasonable. Furthermore, petitioner has already raised the substantive issue of the validity of his career offender status based on the prior escape conviction on appeal, as well in his petition for a writ of certiorari, and it was rejected by both the Fourth Circuit Court of Appeals and the U.S. Supreme Court. Petitioner has neither proved ineffectiveness nor prejudice and his § 2255 motion should be denied.

### Petitioner's Reply (Dkt.# 87)

In his reply, the petitioner reiterates the claims previously raised in his original § 2255 motion and attempts to refute the Government's position on the same.

**D. <u>Other Collateral Proceedings</u>**

On May 2, 2008, petitioner, filed a pro se Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense pursuant to 18 U.S.C. 3582 (Dkt.# 56), which was denied by Order entered on May 29, 2008. (Dkt.# 62).

**E. <u>Recommendation</u>**

Based upon a review of the record, the undersigned recommends that petitioner's § 2255 motion be denied and dismissed from the docket because the only claim that petitioner raises that falls outside the scope of his valid, knowing and intelligent waiver of the right to file a § 2255 habeas corpus petition is procedurally barred, as it has already been raised on direct appeal.

### III. <u>Analysis</u>

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." <u>Sutton v. United States of America</u>, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**A.    <u>Waiver</u>**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned."

8

Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such

9

an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the

Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases.

> In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143, 1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 75 at 13 - 14). Further,

petitioner specifically testified that he understood that, incident to his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if it was within the statutory maximum of not less than five (5)nor more than forty (40) years. (Id. at 14 and 16). His sentence was 188 months imprisonment, or 15.66 years. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his sentence and to file this § 2255 motion,[5] thus precluding a review of its merits. However, since petitioner has alleged that counsel was ineffective after the entry of the guilty plea, his claim "falls outside" of the scope of the waiver and will be given review.

**B.      Procedurally Barred Claims**

Before evaluating the merits of petitioner's claim, the Court must determine if any issue petitioner is raising is procedurally barred. It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976) *per curiam.*

Accordingly, the undersigned finds that petitioner's ineffective assistance of appellate counsel claim is procedurally barred because it has already raised on appeal, albeit couched there as the substantive claim that the District Court committed error by sentencing him as a career offender, based in part on his prior conviction for "walk-away" escape from a federal prison camp. (4th Cir. Dkt. # 26 at 3) (08-4737). Like Boekenhaupt, *supra,* although petitioner "earnestly argues that these issues . . . are different in substance from the allegations which he unsuccessfully presented on direct appeal," petitioner "will not be allowed to recast, under the guise of collateral attack,

---

[5] On appeal, the Fourth Circuit also found that "the district court conducted a thorough Rule 11 hearing, ensuring that Yates' plea was knowing and voluntary in all respects." (Dkt.# 77 at 3).

13

questions fully considered" already on direct appeal. Boekenhaupt, *supra* at 1183. Petitioner's claim that appellate counsel was ineffective for not raising the Chambers case to challenge the consideration of his prior conviction for escape in determining his career offender status is a thinly-disguised attempt to re-litigate what has already been repeatedly considered and rejected, not only by this Court at sentencing, the Fourth Circuit Court of Appeals, but also the U.S. Supreme Court in his petition for writ of certiorari. Although it is true the issue was not raised by appellate counsel on direct appeal, petitioner raised the issue himself in his *pro se* supplemental brief. Thus, assuming *arguendo,* that appellate counsel did commit error by not raising it, by filing his own *pro se* supplemental brief, petitioner was never deprived of the opportunity to have the claim considered by the Fourth Circuit. Accordingly, even if counsel were ineffective, petitioner has not been prejudiced.

### IV. Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING** this case with prejudice.

Within **fourteen (14) days** after being served with a copy of this opinion/report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Chief United States District Judge, John P. Bailey. Failure to file timely objections to this Opinion/Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: May 3, 2011.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE